The next case called is number 121367 Yarbrough v. Northwestern Memorial, agenda number 11. Counsel, you may proceed. Thank you, Your Honor. Good morning. May it please the Court, my name is Catherine Weiler. I represent Northwestern Memorial Hospital in this matter. Today we ask the Court to address the same certified question that was reviewed in the First District. Can a hospital be vicariously liable under the doctrine of a parent agency set forth in Gilbert and its progeny for the acts of the employees of an unrelated independent clinic that is not a party to the present litigation? The First District answered the question, yes. We ask that this Court reverse and answer, no. Justice Freeman, nearly 25 years ago you authored the decision in Gilbert. And that decision sought to address an inequity in the law. Hospitals were soliciting patients, advertising themselves as full service facilities, offering all necessary services to patients. Yet, hospitals could also avoid liability by working through independent contractor physicians, avoiding the possibility of negligence through principles of actual, excuse me, a parent agency. This Court addressed that. It sought to protect people who sought to treat at a specific hospital. This Court fashioned a specific policy with a straightforward analytical framework. Did the hospital hold itself out as a provider of care? And did the patient reasonably rely on that holding out by treating at the hospital? That's a good question right there. The well-known, famous holding out elements that you just summarized here from Gilbert, very clearly focus on the conduct of the hospital, conduct of the alleged agent, conduct of the plaintiff. Is there anything in that holding of Gilbert that limits where that conduct takes place? Yes, and it's the specific language in Gilbert. Gilbert specifically describes negligent acts at the hospital facility. In the finding, in the holding? In the language of the statute, or excuse me, in the language of the decision. In fact, it's Gilbert page, excuse me, 156, ill second at 524. Quote, under the doctrine of a parent authority, a hospital can be held vicariously liable for the negligent acts of a physician providing care at the hospital. That language is fundamental to exactly what the scope of Gilbert is, and why Gilbert can't apply in this case. Because the care at issue here wasn't given at a hospital facility. Now to be very clear, and we've tried to be very clear about this in the papers, we are not trying to suggest that the care needs to be given within the four walls of a hospital. There are many circumstances that I'm sure the judges can conceive of, that anyone can conceive of, in which the care could be given at a hospital facility. A hospital imaging clinic, that's off-site. An urgent care clinic, which is off-site. That's not the issue before this court. The issue here is the care that the plaintiff claims is attributable to the hospital. The care she claims she can sue the hospital for occurred at an independent clinic, a federally operated clinic. It had nothing to do with Northwestern other than that the physicians at that clinic had hospital privileges at Northwestern. They had staff privileges there. Can I stop you there too? Just to talk a little bit about where we are procedurally. There was a motion for summary judgment. The trial court denied that, finding that there were issues of fact on the question of apparent agency. There was a request for a 308. We understand, of course, the denial of summary judgment is not appealable, and so this permissive 308 question was proposed. The specific question asks, as you just said, whether or not there can be liability under the theory of apparent authority set forth in Gilbert and its progeny for the acts of the employees of an unrelated independent clinic that is not prior to the present litigation. Now, we understand that this is a question of pure law. This is not grounded in the facts of this case, this question. It couldn't be. It's a 308. Why isn't the answer to this question? No. If there is no evidence that the acts of the employees were, that it was unrelated and not connected to the hospital, then there cannot be a recovery. Or, if there is sufficient evidence, this is, of course, with the Pell Court, if there is sufficient evidence that the employees' conduct was in fact related and connected to the hospital, then there may be liability. In other words, isn't this a pure fact question? No, Your Honor, and as I understand the question, it's basically, doesn't it depend? Well, I mean, you just said, the question is unrelated and independent. And you said to us, they are unrelated and independent. How do I know that? This is not, we're not deciding that this case, the facts of this case, we're not here to review your summary judgment motion. We're here to say, if the facts show that the hospital and the agent were unrelated, then there would be no apparent agency. But if the facts show that they were sufficiently under Gilbert, then perhaps there would be liability. Two reasons, Judge. The first is more broad and would apply to any case. Because any rule of law has to be interpreted under the specific facts of the case. You never look at any sort of a legal argument in a vacuum. Even in a 308? Even in a 308. What facts are we to assume in this 308? If I can give the Court an example, I want to answer the question. For example, even in, say, a 2615 motion, a motion where the plaintiff is moving to dismiss, purely as a matter of law, the Court still needs to look at what are the allegations in the complaint to see whether or not those allegations would work within the rubric of the allegation being made or not. It's always going to depend at some level on an understanding of the facts, not an interpretation of the facts. So you're saying that a 2615 is the same thing as a 308? No, Your Honor. I'm trying to answer the question about is this a question of fact, is this not a question of fact? That's why this is not a question of fact that remains in doubt. Because as a preliminary matter, in any case, the Court will always have to look at the facts of the case. And in this particular case, the facts are not in dispute. But they are. The trial court found that there was a question of fact. The trial court found that the jury could interpret the way Gilbert applies to these facts in two different ways. The jury could potentially interpret the holding out and reasonable reliance elements of Gilbert as they do apply whether or not you sought care at the hospital or they don't apply whether or not you sought care at the hospital. But that is also why the trial court issued, excuse me, certified the 308 question because the trial court wasn't sure is that a question of law that can be resolved as a threshold matter or is that a question that the jury needs to decide? By which I mean, we know what the facts are. The facts are not in dispute. The parties have agreed as to what those facts are. Knowing what those facts are, can we simply interpret those facts based on a very clear statement of the law? Or is the law so broad, and by the law I mean the application of Gilbert to these facts, is that apparent agency doctrine so broad that a jury needs to interpret based on any facts that are alleged in a medical negligence case whether or not the facts speak to the concern in Gilbert? It sure sounds like a motion for summary judgment. You're asking us to review a motion for summary judgment. I'll ask you one final question. So what are the facts? You say we have to consider all the facts. So therefore we have to consider all the facts the plaintiff put in. All the facts about the relationship of the two members of the board are from the hospital and that there's a great deal of funding done by the hospital and the website saying there's a partnership, there's an affiliation agreement. So you concede that what we're really doing is looking at all of the facts to decide whether or not the plaintiff's evidence is sufficient to show a relationship sufficient under Gilbert. Is that what you're asking us to do? I'm asking the court to look at the facts that are alleged and decide whether or not as a matter of law did those facts create a claim that can proceed under Gilbert. Sounds like a summary judgment motion to me. And the reason the answer to that has to be no is because of this threshold problem. This threshold problem is did the plaintiff seek treatment at the hospital at all? The answer to that is no, she didn't. So everything that you just mentioned, Justice Tice, the affiliation agreement, the board members, the funding, all of those facts related to the relationship between Erie, which is the clinic, and Northwestern, which is the hospital, those are all secondary to this fundamental threshold question. Did the plaintiff go to Northwestern for this treatment? If she didn't, if that wasn't her goal, then Gilbert doesn't even apply. And that's why trying to interpret this, even on a summary judgment motion, even trying to look at this with all of the facts as we understand them and fit them into that framework that Justice Freeman created in Gilbert, it doesn't fit. It just makes no sense. It's trying to fit a square peg in a round hole. And that's because of that fundamental preliminary threshold problem of did the plaintiff seek treatment at the hospital? If she didn't, if that's what is meant in Gilbert, in that language that I read to you, Justice Tice, and I want to reiterate it because it's so fundamental to how this Court has to look at the decision, to the extent, again, quote, that a patient reasonably relies on the hospital to provide such services. A patient may seek to hold the hospital vicariously liable. I'm sorry, that's in York. It's the same language. This Court uses the same language in York 10 years ago. The language from Gilbert is under the doctrine of a parent agency, a hospital can be held vicariously liable for the negligent acts of a physician providing care at the hospital. There's a second summary in Gilbert of what the factors are, correct? That's correct. It doesn't use that language. But it always comes back to that language. It always comes back to that language about providing care at the hospital. And that's why even, although I apologize, I was mistakenly quoting York, that language becomes relevant. All of the cases that evaluate a parent agency use that important qualifier, care given at the hospital. Now certainly the First District disagreed with that argument very specifically in its opinion here. But that is really the nub of the question here. Does Gilbert apply to care given outside of the hospital facility? If it doesn't, then we move beyond what you were asking about Justice Tice.  No, it's not. Because if Gilbert does not apply to these facts, then there can be no application of a parent agency in this case. What do you think about the case about the clinic, the Loyola case? It's entirely consistent with what this Court was describing in Gilbert because the care was given at a hospital facility. That case is called Malinowski. There's no question that in Malinowski the patient is treating at a Loyola-owned clinic. It had a big sign on the front of it that said Loyola. It was part of Loyola Hospital's campus. It was a hospital-owned facility. And that's again why that qualifier, a hospital-owned facility, is so fundamental here. What if the hospital owns the property and leases it to a clinic? That's the Condell case, Your Honor, the Robers v. Condell case. The Second District said that's not. There's no apparent agency. It doesn't work in that situation because the plaintiff was not seeking care at Condell. The plaintiff was seeking care from a private physician who happened to have space in that facility. And that is what is so concerning about the First District's decision because if the First District's decision stands, any physician who has private office space will be in a position to potentially tether the hospital to care given in that private clinic simply by virtue of being on, having staff privileges at the hospital. Can a hospital avoid the apparent authority agency in some way by clarifying the nature of the relationship to the public? How is the hospital to do that, Your Honor? The advertising I believe here was the clinic was saying that they have Northwestern as a partner, as a collaborator. The clinic's website lists it's the hospitals and other organizations with whom it works. It's not just Northwestern. There were a number of hospitals who were identified as partners of ERIE. Okay. Does Northwestern benefit financially? No. It does not. In any way? It does not. There's been some discussion about that. I don't want to go too far outside of the record. There were some statements made over the course of the amicus briefs. Northwestern does benefit. Northwestern doesn't benefit. Are they included in their tax exemption, non-for-profit, for giving free services? I don't know the answer to that question. What I do know the answer to is when there's discussion about Medicare reimbursement and Medicaid reimbursement, that is not a profit center. That at most of the time, a hospital isn't even recovering the full cost of care as a result of that reimbursement. So to suggest that somehow this is some sort of a profit-making venture, that's simply incorrect. None of the hospitals, and the amici speak to this, none of the hospitals engage in this type of community care, working with these centers that are directly on the ground in places that need this care the most. The hospitals are not engaging with that simply because they're trying to encourage more people to use the hospital or they're trying to have more clients come to the hospital. That's not the concern that illuminated Gilbert. In Gilbert, the concern was hospitals are advertising their services, they're soliciting patients actively, they're competitive, they're doing that by trying to say, we offer the best services, we serve every single need that you may have come to our hospital directly, and then when patients did go to the hospital directly, suddenly there were issues related to whether or not a patient could sue the hospital. This is a different situation. This is hospitals engaging in community service, trying to assist these facilities, but functionally in a way that's no different than the hospital's relationships with private physicians. It's the same process. Physicians at Erie or any of these other clinics still need to apply for staff privileges, still need to go through the same vetting process, and then the relationship is simply one of staff privileges. Questions about, do you support these entities economically or not? That's not the question. The question is, how closely are these two entities connected in terms of the staffing, in terms of the actual physician care? Again, it's no different than a private physician's office. That's what I was starting to address, Justice Tice, to you is, the concern is, if this decision is allowed to stand in its current form, the mere fact of giving a private physician staff privileges at a hospital arguably creates the appearance that that physician, that private physician, is acting as the hospital. So at that point, there becomes an argument for any plaintiff. It may be an argument, but maybe it's a poor argument. Maybe that's the fact question that gets resolved and the jury comes back and says, no, that's not sufficient evidence under Gilbert. But that's what puts every hospital, potentially, on the hook to go to trial, not suggesting it puts them on the hook for negligence, but for the actual damages. But it puts them in a position where every hospital would have to go to trial, to a jury trial, to resolve any negligence question raised by a patient, even if it's treatment given at a private facility by a private physician and there was never any relationship to the hospital at all. Do you know of any case that didn't go to trial or the summary judgment was reversed or the motion to dismiss was reversed? No. I mean, the reviewing court found it was a question of fact. No. Aren't they all questions of fact? Isn't that how Gilbert comes out, York comes out, all these cases ultimately comes out that it's a question of fact? As I recall, Gilbert addresses it as They reversed summary judgment. They reversed summary judgment and said that the plaintiff can move forward because the plaintiff satisfied these requirements. The plaintiff was able to allege I treated at Sycamore Memorial Hospital because I thought I was going to be treating with Sycamore Memorial Hospital physicians. I cannot find a case that is akin to this where the plaintiff is not alleging that she sought treatment at a specific hospital and then was told that the hospital was not in fact where she was treating except Malinowski and Malinowski involved treatment at a hospital facility. The only other case I've been able to find under Illinois law is the Robers versus Condell case and that's where the court said no, no, there's not a relationship here. Gilbert doesn't apply here. You can't move forward with the trial. The concern becomes how many more cases are we going to see that can't get resolved on summary judgment? There cannot be a ruling on summary judgment because as you suggested Justice Tice, isn't this just a question of fact for the jury to decide? No, not yet. If the plaintiff can articulate those elements identified in Gilbert then maybe. Then maybe there will be an argument on summary judgment. Then the trial court can decide. Yes, you should move forward. No, you shouldn't move forward. But the threshold determination needs to be does Gilbert even apply here because if it doesn't you find yourself in the space that hospitals were in before Gilbert. A parent agency doesn't apply. You can establish that there's no actual agency therefore the claim has to go away. Conceivably that argument can be made on a motion to dismiss. But we weren't in a position to make that here because of the way the court is interpreting Gilbert. And that's what we're asking this court to resolve. How is Gilbert properly interpreted? What is the scope of Gilbert? Is it so broad as to encompass any claim based on the actions of a staff physician? And that leads to the second important policy problem that's created by this decision. If the answer is it's a fact question you're going to have to resolve this on summary judgment or more likely all of these cases are going to have to go to trial. There's a way for the hospitals to avoid that result. Stop supporting charity care. Stop supporting these clinics. It's too serious a liability. The exposure is too significant. At that point the very people this court sought to help in Gilbert are the people who are being penalized by the way Gilbert is being interpreted. If hospitals have to make that choice they will end their support of charity care. I see that my time is up if there are no questions. Thank you. My name is Howard Janet. I represent the Yarborough Goodpasture family at Belize. And to begin with I'd like to thank the court for the opportunity to present oral argument here today. I'm from Maryland not from here so thank you very much for that. I think it's important that we focus on the context in which this case  So we're really here at the three-way to talk about what the law is more so than what the facts are. So I'm going to quickly ask that we all zero in on the certified question. And the question of course deals with arguably an unrelated independent agent with respect to the principle that was being attempted to be held in. So and the focus there is why should the answer to that question be yes or no? And I would submit to you the answer is a resounding yes. I would submit to you that's the case because for purposes of apparent agency what the true actual relationship is between an alleged agent and an alleged principle is totally irrelevant. What is relevant is what the business relationship reasonably appears to be. Now whether Mr. Yarbrough establishes via vicarious liability should be a function or can rather establish vicarious liability should be a function of one thing and one thing only. And that is can she satisfy the elements of the Gilbert test or can't she? And that's true regardless of the business relationship between the agent and the principle. Can we go back to your first comment Mr. Janet? So would you agree then that Northwestern did nothing to act as principle in this case? No, I don't agree with that at all. Northwestern was a state of facts but if we'd like to get into it, Northwestern did many things. Well you're saying that's irrelevant, right? No, I'm saying that their true relationship is irrelevant. What is relevant under the Gilbert test is what holding out Northwestern engaged in either directly or through the alleged apparent agent. That's separate apart from what the actual business relationship was between the two. And does that all tie into you'll be able to get treated down the line at Prentice? Is that where you're going with this? Well there's several bases upon which to go with this. One is that we would suggest that Northwestern should be held in because its agent, alleged agent, Erie, made representations to Ms. Yarbrough that caused her to believe that the care she would be getting, particularly the diagnostic care, particularly ultrasound, which is a diagnostic procedure, would be performed at and by Northwestern Hospital. She was expressly told that. She did not go to the clinic for purposes of getting her prenatal care. She went there for free testing. She was solicited to be a patient. That's what happened here. They enticed her to become a patient of the clinic, quote unquote, by telling her that in reality her delivery would be at Northwestern and in reality the ultrasound was going to be provided by Northwestern. And the relevance to that is, on many levels, but this case is about a misinterpreted ultrasound that was done at the clinic. But this woman was told that her ultrasound would be handled by Northwestern. So isn't it... Ms. Miller, didn't she go to Illinois Masonic Hospital? She didn't pick it. The ambulance took her there probably because it was the closest to where she was. She wasn't... But with respect to the care she got here, her prenatal care, she clearly was relying on the reputation of the hospital. These representations that were there  not going to be rendered by them. Here at Erie, there were no Northwestern employees there. So the care wasn't by Northwestern, was it? Well, that's what a parent agency is all about. If the care was by Northwestern, then the answer is we'd be dealing with  independent contractor. That's what this case is all about, not the actual relationship. It doesn't matter that whether they were independent contractors or not. The point is that the appearance that was given to her based upon the representations of the clinic was such that she believed that the clinic and Northwestern were  independent contractors. I apologize. Not only for those representations, if that's always there, that wouldn't be enough. The Gilbert test makes clear that before the principle could be held in by virtue of the conduct of an alleged agent, that principle would need to know that representations are being made and acquiesce in that. This record is replete with information that supports that, evidence that supports that. Just parenthetically, I'll point out that Hollis Sales, Holly Sales, or Sales, I believe is the correct pronunciation, who was the VP of Marketing, VP of Public Relations for Northwestern, conceded, admitted under oath at her deposition, that she knew that North, that the clinic was holding out to patients and to the public, their affiliation agreement, letting them know generally through its advertising, through digital advertising and other means, that there was a partnership between the two of them to provide care. They knew that Northwestern was holding out their relationship to individuals and that to is Northwestern liable simply by virtue of the conduct of the agent? Not in and of itself. There also have to be some affirmative action on the part of Northwestern to know and to acquiesce. I would submit to you the acquiescence here. There's more than acquiescence. Aside from her testimony where she said they knew it, but never did anything to stop it, that is as representations, on top of it not only was Erie representing to the public that there was this partnership and again, I don't want to get too deep into the facts, but if you look at the testimony, if you look at the affiliation agreement, it's clear that they're holding themselves as partners to provide quality health care, comprehensive care, in the form of a diagnostic in the connection with obstetrical care. That's what these representations are about. It's about complete obstetrical care. In fact, the affiliation agreement comments about the fact that the whole objective here is to permit care to be rendered by Northwestern that the clinic might not be able to render by itself. That's why they're working together, and the specific care that's referenced is in diagnostic care, the  So for this woman, it shouldn't be any surprise that she thought that there was a partnership, that she thought the care was being delivered by Northwestern. I would submit to you the answer is no. And I would also add... But Gilbert doesn't direct that courts evaluate whether a hospital advertises its services to support the community. It's whether the hospital holds itself out as a full service provider of care to a person seeking care at that hospital, right? No. It's two ways to go. One is if there are representations to the public in general about that would lead the public to believe that the alleged agent is indeed the agent of, or the apparent agent rather, is in reality the agent of the hospital. And that can be accomplished in two ways. Either representations directly to the patient or representations out to the public generally. And what's deemed to be satisfactory under those circumstances, did the patient rely... The question would be, did the patient rely on the reputation of the hospital as opposed to a specific doctor? There's no question in the facts of this case that this patient submitted to care at the clinic because she was relying on the reputation of Northwestern about which she was already familiar. It was a large hospital, it was well respected, and I'm paraphrasing. That's what's required with respect to that component. With respect to the actions of the agent, then the question would be what actually was told to the patient. Mr. Kessler, I think you were proposing counsel's suggestion with regard to a doctor, a private doctor who has ability to operate at the hospital. Many patients probably would say, gosh, I'm going to be at Northwestern Memorial Hospital, and so the holding out of the fact they want to go to Northwestern is what happens to the principal in that case. I think the argument that was made is that virtually any doctor who has privileges at Northwestern who is consulted by a patient would, under those circumstances, Northwestern would be exposed to an argument about a parent agency. That's completely incorrect. There would be no justifiable reliance. So we talked about a doctor in a private office, whether it's on the Northwestern premises or not, just like the case where, and I forget which hospital it was, where there was a university building, but in that patient went to a specific doctor. She wasn't going to that university facility for care. And it's the same situation with respect to all doctors who have privileges. If a patient picks a doctor because he has privileges, what's relevant is he picked that doctor. He did not rely on the hospital to provide care. But isn't that a fact question? Because every patient might want to be affiliated with Northwestern, and they are looking for a doctor who is affiliated with Northwestern. Well, I would say to you that there is no potentiality that justifiable reliance could be met as a matter of law. You need to have justifiable reliance. That case would never get passed summary judgment. It just couldn't. There would be no evidence of justifiable reliance. The patient would have picked the doctor. You're saying that Erie patients did just that, and that is totally reliant on the fact that Northwestern is the place where they're going to receive care. Well, it's not just the place that they were getting care. It was the hospital that was providing the care. Right. That's the hospital. But it wasn't any specific physician at Northwestern. No, but it was at the hospital. Absolutely. Absolutely. Counsel, the issue of whether you have here sufficient evidence to show apparent agency is not before us, right? I agree, and if it were, there would be plenty of evidence to support it that I would be arguing for. So it's irrelevant. So your opposing counsel says it's a real narrow legal issue. The only issue before us, does Gilbert apply when the conduct that Gilbert sets out takes place outside the hospital does not apply. The only limitation is you need to be able to satisfy the elements of Gilbert. This comment that, oh, the Gilbert decision says it makes reference to in a hospital. Of course it does. That was the context in which that case came up, and that's why there's reference to that. But as you pointed out previously, the actual principle, the actual test, has no such qualification. This Court dealt with the specific issues of Gilbert, and then, I'm sorry, with the Gilbert facts, but then went and explained what the law is that they were applying to those facts. The law hasn't changed. The law does not change. So Gilbert recognized in its context that the medical care world was rapidly changing, and it was for that reason that this concept of parent authority was adopted by this Court. It's very difficult to know when you go into the emergency room who works for who and who's an independent contractor. And so the Court adopted this idea because of the changing nature of the medical world, treatment world. Well, in 20 years, we certainly evolved even beyond what the situation was then. So the question is, should we revisit those policy ideas that drove Gilbert to some degree, and in fact, limit Gilbert to the four walls of the hospital? I believe absolutely not. That would be retrenching, stepping back from the opinion that this Court previously rendered, and there would be zero basis for doing that. Yes, there's been evolution. There's more reason now than ever to apply the Gilbert doctrine. What hospitals were doing 20-some years ago pales in comparison to what they're doing today. It pales in comparison to what they're doing today. They're not just hospitals anymore. They're hospital systems. They're hospital networks. They're integrated networks. They rely on a multitude of outlets to provide care, to get service patients, and to make money. And those include things like joint ventures. They include things like partnerships with community clinics like this one. And when they engage in those partnerships for the specific purpose of having that clinic funnel patients to the hospital, that's what this is about. The clinic made a deal to funnel patients to the hospital in return for which the hospital was partnering with them to provide care that they really weren't up to providing. So that the full comprehensive care could be provided. And the hospital was happy to do it. Patients were being funneled to it. 11.2 percent of all deliveries at Women's Prentice were patients who were funneled to them from the clinic. We debate whether it's profit or not profit, but we're talking about revenue. The revenue generated, if my recollection is correct, was about $25 million. But the benefits to the behemoths don't stop with what's the amount of money they're getting. Well, Mr. Janet, first of all, your first premise, which is correct, that there's a lot more joint ventures, between hospitals, that would never pose a problem as to whether there was an agent. I mean, the fact is, you know, Del Nor Hospital and Center DuPage being part of the Northwestern system, if Northwestern was sued there, I don't think we'd have the same type of case here. That isn't a problem. And with respect to relationships, whether it's this or any other business, there's relationships all over the place between one company and another company that would not implicate agency principles in every instance. I think under circumstances where Northwestern held out to the public that they were jointly providing care to patients, obstetrical care, including at this clinic in particular. They had deals with other people at other clinics, where it would be a gross miscarriage of justice to deny any patient of the clinic who was an obstetrical patient from being able to impose or rely on a parent agency under circumstances where the kinds of representations that were made to the public in this case. So, yes, you mean what you say, and that's an interesting point. They specifically said it in their own advertising. They knew what URI was doing. They didn't stop them. The Northwestern also provided money to this clinic significantly. They have members on their board. We're not  do charity work anymore. That's all part of the charitable and community activities of the hospital. If we expand this principle beyond the four walls of the hospital, the hospital is not going to do charitable work anymore. Well, number one, you've already expanded beyond the four walls. But is there justification for it? And the answer is, of course, there is, because these hospitals are big, redundant behemoths that are providing care through many, many outlets, and they're not just ones with their name on it. This case proves that they're providing joint care in partnership, where they're telling people they're actually providing the care jointly with clinics. And I would submit to you under those circumstances, I mean, we're talking about equity is what's behind parent agency, right? It's been in existence here for 140-some years, maybe 150 now. And about 150 years ago, there were more reasons today, and that relates to the clinic. One thing I would say, and I know I'm running short on time, so a couple of quick points if I may, and that is this case really presents an opportunity to do more than just make a decision relative to the facts of this case. It presents an opportunity for the court to clarify for judges just like the one who submitted the proposed question under 308, and it gives you the opportunity to do the same thing that the Wisconsin court did when it had before again the same, and I'm sure you recall that Wisconsin court, and I forget the name of the case, Pemperin, and that's where this whole Gilbert analysis started. You all embraced that part of here as part of the law. The Supreme Court there has since been asked to reevaluate that situation in a similar context, and what they said was, and I think this is important, this is what this court should do. Mr. Janet, your time has expired. You should conclude. Okay. I'm going to conclude by saying that that court said specifically we conclude that the Gilbert test, they're talking about their own test, applies in all circumstances, any is the word, any circumstances under which the Gilbert test, or their equivalent of the Gilbert test can be satisfied. Thank you very much. Thank you. Your Honor, the question you're asked to decide today is, does Gilbert apply when a patient doesn't seek care at the hospital? And Justice Tyson, I want to be very clear because I'm concerned about the  I'm not saying that the care has to be within the four walls of the hospital. The care needs to be at a hospital facility. That hospital facility, that hospital may have facilities all over the city. That's a fundamental distinction because this is not an argument that a hospital could never be responsible for care at the  That's the distinction that Northwestern is trying to raise here. This case is no different on the facts objectively. If you look at the facts, it's no different than an allegation that a plaintiff elected to treat with a private physician in that private physician's office and later sued the hospital because she alleges that eventually, she was told eventually she may treat at that hospital and she was told that her physician has privileges to practice at that hospital. That's the distinction. If the plaintiff can move forward on that claim, then a hospital can be sued for any care, potentially sued for any care given by a private physician in that private physician's office. This is where examples are helpful to understand the absurdity of the results or the breadth of the result that could happen. Obstetrical patients are an easy example. Most obstetrical patients treat with private physicians in private physician office spaces and are told that they could potentially have to go to trial for any negligence allegation for claims that happen months before the patient ever even sets foot in the hospital. The patient may never have even gone to the hospital. There still has to be some relationship. That's exactly right. There has to be some relationship and that relationship has to be that the patient was trying to treat at the hospital. That's why that language is in Gilbert. That's why that distinction is so fundamental. What about a patient who has back issues and treats with his physician, goes to the private physician space, engages in a course of conservative treatment, there's some sort of negligence related to that, but the patient was told that eventually he may treat at Rush University Hospital. Does the patient have a claim at that point against Rush? That's what the First District's decision would open up. Potentially. The patient never saw treatment at Rush, saw the doctor who had privileges at Rush, was told may have to treat at Rush eventually. Under the facts of this case and under the framework that the First District has decided Gilbert uses, that is a possibility. What if that private physician has staff privileges at multiple hospitals? Is the interpretation that the First District has given to Gilbert so broad that somehow there's an issue related to both hospitals? Or even, as you, Justice Thomas, were saying, there shouldn't be any relationship, any issue for a network of hospitals, but even plaintiff's counsel seem to suggest perhaps there would be a problem. There's a network of hospitals. A plaintiff elects to treat at one hospital. Can she sue another totally unrelated hospital for that care suggesting that there's some sort of a relationship between these entities? There are contractual agreements. There are joint venture agreements because they're part of a network. The look on your face, Justice Tice, suggests that makes no sense. And I completely agree. And that is the concern. That is the concern in this case. If there is no anchor to Gilbert, and that anchor is the patient sought treatment from the hospital, if that anchor isn't there, then Gilbert broadens so much that conceivably a hospital could be on facing trial on liability for any of those potential issues that could arise in a private physician. What is the rule you want us to write? That if the patient does not seek treatment at the hospital, Gilbert doesn't apply at a hospital facility. Not within the four walls of the hospital, but if the patient is not seeking treatment  the four walls of the hospital, then Gilbert  not apply. If the patient does not seek treatment within the four walls of the hospital, then Gilbert does not apply. If           of the hospital, then Gilbert does not apply. If the patient does not seek treatment within the four walls           patient does not seek treatment within the four walls of the hospital, then Gilbert does not apply. If the patient